# Exhibit 14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ARLENE TESSITORE, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-11775-NMG |
| GLAXOSMITHKLINE PLC, and, SMITHLINE BEECHAM CORP. d/b/a/ GLAXOSMITHKLINE,INFOMEDICS, INC., Defendants. | ) ) ) ) ) | |

UNITED STATES' STATEMENT OF INTEREST
AS TO DEFENDANTS' MOTION TO DISMISS

The United States of America, as the real party-plaintiff in interest in this action, submits this Statement of Interest pursuant to 28 U.S.C. § 517, to respond to certain arguments made by Defendants in their motions to dismiss relators' Amended Complaint. The United States remains the real party in interest in this matter, even where, as here, it has declined to intervene in the action. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004). In addition, because the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, is the United States' primary tool used to prosecute fraud on the government, the government has a substantial interest in the development of the law in this area and in the correct application of that law in this, and similar, cases.

The United States seeks to clarify the following legal issues related to these claims:

(1) Allegations of kickbacks to induce prescriptions of a drug, if properly pleaded, state a claim that any resulting claims to Medicare and Medicaid for the drug were false and fraudulent.

(2) Defrauding of the Food and Drug Administration ("FDA") by failing to comply with mandatory reporting of adverse drug events could potentially be part of a set of facts stating a claim for violation of the FCA.

(3) Rule 9(b) does not require pleading of specific false claims if the fraud is sufficiently alleged so as to make the submission of false claims "beyond a possibility."

(4) Should the Court grant the motion to dismiss, such dismissal should be without prejudice to the United States.

## BACKGROUND

In this case, the Relator alleges that the failure of GlaxoSmithKline, LLC and GlaxoSmithKline plc (together "GSK") to ensure that its contractor, InfoMedics, Inc. ("Infomedics") reported adverse events with the drug Paxil to the FDA resulted in all claims for Paxil paid by the government being false claims under the False Claims Act. Relator posits that her former employer Infomedics's failure to report certain adverse events to GSK resulted in those adverse events never being reported to the FDA and that, had they been reported to the FDA, the FDA would have taken action to withdraw Paxil from the market. Relator also alleges that GSK misrepresented to the FDA its intent to comply with its adverse reporting obligations. Relator lastly argues that certain GSK programs which paid physicians to participate in a study constituted a kickback and thus also caused false or fraudulent claims to be submitted to the United States.

I.  **PAYMENT OF KICKBACKS RENDERS SUBSEQUENT CLAIMS FRAUDULENT WITHOUT PROOF OF ANY SPECIFIC FURTHER "MISREPRESENTATION."**

Defendants incorrectly suggest that even if GSK paid kickbacks to physicians to induce them to prescribe Paxil, that could not state an FCA cause of action for the resulting claims submitted to state Medicaid programs -- even where a lack of kickbacks is a condition precedent to payment for the Medicaid programs. Defendants argue that the Relator would have to identify some additional express misrepresentation in order to state a claim under the FCA. The First Circuit, however, has explicitly rejected the argument that a kickback-induced claim cannot be false even in the absence of an "an express legal representation or factual misstatement." *United States ex rel Hutcheson v Blackstone Medical*, 647 F.3d 377, 379 (1st Cir. 2011). In *Blackstone,* the First Circuit made clear that the act of submitting a claim is a representation that the claim is entitled to be paid and that it complies with any preconditions of payment such as prohibitions on the payment of kickbacks. *Id.* The First Circuit held that the payment of a kickback in connection with a claim submitted to a federal health care program was sufficient to render the claim false. *Id.*

Moreover, in *New York ex rel Westmoreland v. Amgen*, 2011 WL 2937420 (1st Cir. 2011), the First Circuit addressed the question of whether allegations that kickbacks were paid to physicians to induce them to prescribe a drug could state a claim under

3

parallel state false claims acts for the subsequent claims for the drugs submitted to Medicaid. The Court found that where the state Medicaid programs make payment conditional upon a lack of kickbacks, a claim is stated, even though the prescription submitted does not itself contain any such certification. *Id.* at *6 (holding that a claim is false or fraudulent if it in effect "misrepresents compliance with a material precondition of payment").

Moreover, after the First Circuit's decisions in *Blackstone* and *Amgen*, the District Court in *Amgen* (Young, J.) observed:

> [C]ourts, without exception, agree that compliance with the Anti-Kickback Statute is a precondition of Medicare payment, such that liability under the False Claims Act can be predicated on a violation of the Anti-Kickback Statute.

*United States ex rel. Westmoreland v. Amgen*, 2011 WL 4342721 (D. Mass. 2011) at *12 (reviewing extensive case law in support). Moreover, as noted by Judge Young in that case,

> Courts appear to have reached the conclusion that compliance with the Anti-Kickback Statute is a precondition of payment because, quite simply, kickbacks affect the government's decision to pay.

*Id* at *13 (citing cases). Judge Young also explained why this makes sense:

> Kickbacks are designed to influence providers' independent medical judgment in a way that is fundamentally at odds with the functioning of the system as a whole. The Anti-Kickback Statute is intended not only to prohibit but also to prevent such fraudulent conduct.

4

> * * * *
>
> Here, compliance with the Anti-Kickback Statute clearly factors into the government's reimbursement decision; not only is the government unwilling to pay a claim that is the product of criminal conduct under the Anti-Kickback Statute, but also to submit a claim for reimbursement is in effect to ask the government to fund criminality retrospectively. . . .

*Id.* Thus, if the allegations of kickbacks are adequately pleaded, then they can state a claim under the FCA for the subsequent prescriptions for Paxil to Medicare and Medicaid by the physicians who received the kickbacks. The violation of the Anti-Kickback statute, compliance with which is a precondition to payment of a claim, renders any such claim fraudulent and thus actionable under the FCA.

The United States submits, however, that the allegations pleaded by the Relator here are not sufficient to allege illegal kickbacks occurred. Thus, based upon the allegations in this case, the Court need not reach the issue of whether kickbacks would state a claim under the FCA, although the United States submits that the law is clear that it would.

**II. FRAUD UPON THE FDA COULD STATE A CLAIM UNDER THE FCA FOR RESULTING SALES TO FEDERAL INSURERS.**

The United States also submits that because the Relator's allegations are not sufficiently pled, the Court need not and should not address whether a viable FCA claim can arise where a manufacturer is alleged to have withheld or falsely reported

material information on adverse events that could have resulted in FDA action impacting whether the product was reimbursable.

The United States does not in this Statement of Interest take any position on whether the unspecified adverse events alleged here were reported to the FDA, or if not, whether the FDA would have acted any differently if they had been reported. Indeed, the record in this case suggests that the FDA was made aware of the information pointed to by the Relator but did not then take the actions that she hypothesizes it could have.

The United States, however, respectfully submits that there is no need to reach any conclusions broader than what the narrow factual record in this case supports.[1] As noted by the First Circuit in *Blackstone*, the FCA "indicate[s] a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud." 647 F.3d at 390 (quoting *United States ex rel Marcus v. Hess*, 317 U.S. 537, 544-45 (1943)). In other contexts, facts that give rise to violations of the FDCA and its regulations could also give rise to an FCA violation; similarly, violations of the adverse event reporting requirements could in some circumstances defraud the

---

[1] For example, the January 28, 2011 letter from FDA to Sanofi cited by the Relator does not represent a comprehensive recitation of all legal consequences that could flow from the violations it identifies; the letter, on its face, states otherwise.

6

FDA in such a way that would be material to the government's decision whether to pay for the products.

*United States ex rel. Roop v. Hypoguard*, 559 F.2d 818 (8th Cir. 2009), is not to the contrary. In *Hypoguard*, the Court found that the relator had not sufficiently alleged a basis to conclude that the failure of reporting would have impacted agency action, not that such allegations could not state a claim even if sufficiently pleaded. *Id.* at 825. The Court in *Hypoguard* merely decided that the relator's "conclusory allegation" in *that* case (*i.e.*, that the government would have recalled the products and not reimbursed such claims if it had known of the defects) was not sufficient to comply with Rule 9(b). *Id. See also United States ex rel. Marcus v. Hess*, 317 U.S. at 543-45 (recognizing that FCA liability can be based on claims that are the product of a fraudulent course of action).[2]

---

[2]The Court in *Hess* explained:
By their conduct, the respondents thus caused the government to pay claims of the local sponsors in order that they might in turn pay respondents under contracts found to have been executed as a result of the fraudulent bidding. This fraud did not spend itself with the execution of the contract. Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid by the P.W.A. into the joint fund for the benefit of the respondents. The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal - payment of government money to persons who had caused it to be defrauded.

*Id.* at 543-44.

Thus, where the facts are adequately alleged, a fraudulent course of conduct to obtain or maintain FDA approval could cause resulting claims submitted to the government to be false or fraudulent under the FCA.

**III. IT IS NOT NECESSARY TO IDENTIFY PARTICULAR FALSE CLAIMS.**

Contrary to Defendants' position, there is no *per se* rule that a plaintiff must identify specific false claims that were submitted to the government to satisfy Federal Rule of Civil Procedure 9(b) (hereinafter, "9(b)"). As recently clarified by the First Circuit, a plaintiff *does not* need to "provide details that identify particular false claims for payment" in order to satisfy 9(b). So long as the complaint provides "factual or statistical evidence to strengthen the inference of fraud beyond a possibility, " the requirements of 9(b) can be met. *See United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 2009 WL 2450716 at * 16 (1st Cir. 2009).

Moreover, where the plaintiff has sufficiently alleged a fraudulent course of conduct that would necessarily render all of the resulting claims false, any requirement that each claim be specified is unnecessary. Thus, for example, if the complaint adequately alleged that a defendant obtained a series of contracts by bid-rigging, then it is unnecessary to specify the particular invoices that were false, since all subsequent invoices are necessarily false. *See Hess*, 317 U.S. 543-45.

8

Likewise here, if the relator had adequately alleged kickbacks to physicians to induce prescribing of Paxil, then the subsequent claims for those physicians' prescribing of Paxil to Medicaid would be fraudulent, and it would be unnecessary to identify each false claim to satisfy Rule 9(b).

## IV. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE TO THE UNITED STATES.

If the Court dismisses this action against Defendants, either on the jurisdictional grounds raised by Defendants, or because Relator failed to plead with sufficient particularity, any such dismissal should be without prejudice to the United States.

Similarly, the FCA explicitly provides that the public disclosure bar does not apply to claims brought by the United States. 31 U.S.C. § 3730(e)(4). Thus, if a relator's complaint is dismissed on these grounds, the dismissal could not preclude the United States from bringing or continuing with an action involving the same or similar claims.

Pursuant to the False Claims Act, a relator files his complaint on behalf of the United States, and once the United States has notified the Court that it declines to pursue relator's allegations, the relator is free to pursue them on his own. 31 U.S.C. § 3730. Under such circumstances, the United States neither files the complaint that initiated the action nor serves the complaint on the defendant. Because the United States

9

has no part in preparing such complaints, it should not be prejudiced if a relator has failed to plead his or her allegations sufficiently.  Such a dismissal does not constitute a ruling on the merits of the defendant's conduct, and does not mean that a better informed relator or the United States could not make out a viable claim in the future.  Moreover, a dismissal with prejudice would be unfair because a relator's complaint that is broadly drafted, if dismissed with prejudice as to the United States, could improperly be argued by a defendant to have the preclusive effect of preventing future actions by the United States against the defendant for conduct that the United States did not investigate and did not know was part of relator's action.  This is not in accord with the purpose of the False Claims Act *qui tam* provisions, which is assisting the United States in pursuing fraud, not hindering it, and should not be the result of the dismissal of an improperly pleaded complaint or a disqualified relator, whom the United States does not control.  *See United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) (holding that dismissal with prejudice as to the United States was improper where basis for dismissal was failure to meet heightened pleading standard under FRCP 9(b)).  Accordingly, the United States submits that, if granted, any dismissal should be without prejudice to the United States.

Dated: October 21, 2011       Respectfully submitted,

                              TONY WEST
                              Assistant Attorney General
                              Civil Division


                              CARMEN M. ORTIZ
                              United States Attorney

                         By:  /s/ Sara Miron Bloom
                              SARA MIRON BLOOM
                              EVE PIEMONTE STACEY
                              Assistant United States Attorney
                              One Courthouse Way, Suite 9200
                              Boston, MA 02210
                              (617) 748-3387

                              JOYCE R. BRANDA
                              ANDY MAO
                              Civil Division, Commercial
                              Litigation Branch
                              P.O. Box 261
                              Ben Franklin Station
                              Washington, D.C. 20044
                              (202) 514-3300